|1LOTTINGER, Chief Judge,
concurring and dissenting.
I respectfully concur in part and dissent in part with the majority’s opinion.
Although I agree that the Dodson’s are entitled to a reduction in the purchase price, I believe that the award is grossly high.
The proper standard for awarding damages in a quanti minoris suit involving real estate is:
1) Generally the amount of the award is the difference between the sale price and the price that a reasonable buyer and seller would agree upon knowing of the defect (the difference in price is established through expert testimony, immediate resale or legitimate/reasonable offers to purchase), or
2) Where there is no evidence of the difference in price, damages are based on the cost to repair the structure.
Fraser v. Ameling, 277 So.2d 633 (La.1973); Lemonier v. Coco, 237 La. 760, 112 So.2d 436 (1959); Bell v. Battles, 532 So.2d 479 (La.App. 1st Cir.1988). In utilizing the first prong of this standard, the majority necessarily concludes that the Hebert offer was “reasonable”.
However, I believe that the offer must be considered in light of the condition placed on it by Mr. Dodson. Dodson conditioned the acceptance on the following language: “Accepted pursuant to the following, the Dodson recovery from Shelley Walker |2and/or Normand/Hoffpauir, their costs and interest per plaintiffs (sic) exhibit-13 in Dodson v. Walker.” A second clause states “(less $400,000).” I interpret this language to mean that Dodson accepted the Hebert offer conditioned on recovery of $740,401.52 in the lawsuit less the $400,000 Hebert offer. Stated another way, Dodson accepted the offer only if he was made whole by a successful conclusion to this lawsuit. I believe that this condition calls into question the reasonableness of the $400,-000 Hebert offer.
Even without the offer, the Dodsons could have proven the difference in the sale price and the present value of the property through expert testimony. Although there was expert testimony regarding a devaluation of the property, the Dodsons presented no evidence of the actual value of the property in its present condition. Thus, with only one questionable offer to purchase and no expert testimony as to the present value of the property, we are left with the second prong of the standard, the costs to repair test.
After reading the testimony of the experts, I am not convinced that the problems will continue to occur with this house. Certainly it is not conclusive that the problems will continue. Thus, the Dodson’s should be able to fix the present defects without the threat of reoccurrence.
There is an estimate of $200 to repair foundation cracks, $481 to repair a crack in a fountain, $2,549 to repair water on the porch, $128 to repair the facia and handrail on the porch, and $2,369 to repair roof leaks. Cracked bricks, sagging doors and misaligned pocket doors had no estimates to re-pah-. The above estimates total $5,727, to which I would add an additional, $7,500 to cover repairs without estimates.
For these reasons, I concur with the majority’s conclusion that the Dodsons receive a reduction in the purchase price, however, I dissent as to the amount of the award and I would reduce the award to $13,227.